**LSKS** LEVINE SULLIVAN
KOCH & SCHULZ, LLP

321 West 44th Street
Suite 1000
New York, NY 10036
(212) 850-6100 | Phone
(212) 850-6299 | Fax

Thomas B. Sullivan
212-850-6139
tsullivan@lskslaw.com

November 19, 2015

**VIA FACSIMILE**

Hon. Margo K. Brodie
United States District Court for the
Eastern District of New York
225 Cadman Plaza East, Room N 626
Brooklyn, NY 11201

      Re:    *United States v. John Doe*, 15 Cr. 302

Dear Judge Brodie:

      We represent journalist and author Johnny Dwyer, who seeks to (a) open proceedings in this criminal prosecution that currently are being conducted in a closed courtroom, and (b) unseal the docket and records in this case. On November 17, 2017, the Court denied Mr. Dwyer's letter application for this relief shortly before a closed hearing was about to begin. At that time, the Court cited the prohibition in 18 U.S.C. § 5038(e) against public disclosure of a juvenile defendant's name or picture as the basis for closure, but invited further briefing on Mr. Dwyer's request and granted oral permission to submit this letter by facsimile because the ECF docket for this case is sealed in its entirety. The nature of the crime charged against the unnamed defendant, the status of the proceedings, the motions made by the parties, and the rulings of this Court are, at present, entirely unknown to the public—even defendant's apparent status as a juvenile cannot be determined from the public record of this proceeding.

**Juvenile Proceedings And Records Are
Not Automatically Required To Be Closed**

      As an initial matter, the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031-42 (the "Act") does not mandate the complete closure of all juvenile delinquency proceedings. While some courts in this district have cited the Act in closing proceedings, multiple circuits have examined this issue and uniformly have concluded that the Act does not compel closure of juvenile proceedings. *See, e.g., United States v. Eric B.*, 86 F.3d 869, 879 (9th Cir. 1996) (Act does not require "closed proceedings, without exception"); *United States v. Three Juveniles*, 61 F.3d 86, 92 (1st Cir. 1995) (*"Three Juveniles II"*) (Act "does not mandate across-the-board closure for all juvenile proceedings"); *United States v. A.D.*, 28 F.3d 1353, 1359 (3d Cir. 1994) (Act does not limit a court's "discretion to strike on a case-by-case basis the balance between the interests protected by the First Amendment and competing privacy interests"). Judge

**LSKS | LEVINE SULLIVAN KOCH & SCHULZ, LLP**

Hon. Margo K. Brodie
November 19, 2015
Page 2

Trager reached the same conclusion in an unpublished order in 1994, *United States v. Nelson*, 22 Media L. Rep. 2320 (E.D.N.Y. Sept. 8, 1994),[1] as have many district courts from outside these circuits. *See, e.g., United States v. L.M.*, 425 F. Supp. 2d 948, 952-53 (N.D. Iowa 2006); *In re Washington Post*, 247 F. Supp. 2d 761, 762 (D. Md. 2003).

The restrictions in section 5038(e), in particular, do not require a courtroom to be closed simply because a juvenile defendant will be present. As the Third Circuit noted, a "prohibition against making a juvenile's picture or name available to the public . . . strikes us as an indirect and unlikely way for Congress to stipulate that all hearings under the Act will be closed to the public." *A.D.*, 28 F.3d at 1360; *see also Three Juveniles II*, 61 F.3d at 91 (same). Rather, the provision was apparently intended to prevent law enforcement officials from disclosing the name or pictures at a press conference. *A.D.*, 28 F.3d at 1361.

Moreover, interpreting the Act to mandate closure of all juvenile proceedings and records would likely violate the First Amendment. *Nelson*, 22 Media. L. Rep. at 2320; *see also, A.D.*, 28 F.3d at 1358; *Three Juveniles II*, 61 F.3d at 92. The Supreme Court in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982), struck down a state law requiring a courtroom to be closed any time a minor victim of a sex crime was called to testify. *Id.* at 607-10. The mandated closure extended only to a limited portion of the proceeding, and the privacy interest at stake was more compelling than in most juvenile delinquency proceedings—relating to the victims of sex crimes and not the accused defendant. The Court nevertheless found that the mandatory closure rule violated the First Amendment access right because it was not a "narrowly tailored means of accommodating the State's asserted interest." *Id.* at 609; *see also, id.* at 611 n.27 ("mandatory rule, requiring no particularized determinations in individual cases, is unconstitutional"). In short, closed proceedings and records are not mandated under the Act, and likely could not be.

**The Proceedings and Records In This
Case Should Not Be Closed Uniformly**

This Court plainly has the discretion to conduct open proceedings in this criminal prosecution, and no proper basis exists to close all proceedings and seal all records. Instead, any closure ordered to protect the confidentiality of a minor defendant should be narrowly tailored so that it is no broader than necessary to protect the privacy interest at stake. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986). As demonstrated in our earlier letter, the public has a substantial interest in ensuring that proceedings remain open to the greatest extent possible, to improve the performance of all parties, avoid the potential for abuse or misconduct, promote informed public opinion, and sustain public confidence in the administration of justice. *E.g., Richmond Newspapers v. Va.*, 448 U.S. 555, 571 (1980); *Press*

---

[1] The *Nelson* opinion is attached as Exhibit 1 to this Letter.

LSKS LEVINE SULLIVAN
KOCH & SCHULZ, LLP
Hon. Margo K. Brodie
November 19, 2015
Page 3

*Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984) (*"Press-Enterprise I"*). As the Second Circuit has put it: "[t]ransparency is pivotal to public perception of the judiciary's legitimacy and independence." *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008). *See* Letter from Thomas B. Sullivan, Esq. to Hon. Margo K. Brodie, dated Nov. 16, 2015 at 1-2 (citing cases).

A Wisconsin court explained the importance of allowing public access specifically to criminal proceedings involving juveniles:

> The results are twofold. First, there will be less misunderstanding of the difficult decisions juvenile court judges are called upon to make. We believe that the legislature did not intend to exclude from the courtroom dedicated and fair journalists determined to relate difficult information in a way that makes this vital intelligence accessible to the general public. Second, the public will be better informed on how the judicial power is being exercised in juvenile courts.

*Wisconsin ex rel. E.R. v. Flynn*, 276 N.W.2d 313, 318 (Wis. Ct. App. 1979); *see also In re News Media Coverage in the Matter of M.S.*, 173 Misc. 2d 656, 662 (N.Y. Fam. Ct., Westchester Cty. 1997) (opening juvenile case to "preserve the integrity of public proceedings, avoid the dissemination of misinformation, enhance public confidence in the court system, and promote a better understanding of the Family Court"); *Press-Enterprise I*, 464 U.S. at 508; *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

It is also likely that "the public interest in these proceedings is higher than in other juvenile proceedings where the transgressions involved more private concerns." *United States v. Three Juveniles*, 862 F. Supp. 651, 658 (D. Mass. 1994) (*"Three Juveniles I"*), *rev'd in part on other grounds by* 61 F.3d 86; *see also L.M.*, 425 F. Supp. 2d at 953 (noting public's keen interest in matter that involved a "significant and growing problem in the District"). While Mr. Dwyer cannot know the nature of the offenses here because of the blanket sealing order in place, he has noted that the deputy chief of the national security and cybercrime section, Assistant United States Attorney Seth DuCharme, was present at both hearings he attempted to attend. Any charge in this case involving either terrorism or cybercrime would be a matter of significant public interest. Also, if found delinquent, the juvenile defendant himself may benefit, "in a rehabilitative way, from the public opprobrium attached to these charged acts." *Three Juveniles I*, 862 F. Supp. at 658-59.

The defendant's privacy in this case can adequately be protected without complete closure of this action simply by requiring all participants, both during court proceedings and in

LSKS LEVINE SULLIVAN
KOCH & SCHULZ, LLP

Hon. Margo K. Brodie
November 19, 2015
Page 4

written filings, to use a pseudonym, such as the juvenile's initials, when referring to him.[2] *See, e.g., Three Juveniles II*, 61 F.3d at 91-92 ("methods short of complete closure, such as the use of initials or pseudonyms" can protect against inadvertent disclosure of juveniles' names); *L.M.*, 425 F. Supp. 2d at 949 n.1 (use of juvenile's initials as an identifier complies with 18 U.S.C. § 5038(e)); *Doe v. Sante Fe Indep. Sch. Dist.*, 933 F. Supp. 647, 652 (S.D. Tex. 1996) (requiring juvenile plaintiffs to be "referred to exclusively through use of fictitious names throughout all proceedings"); *see also A.D.*, 28 F.3d 1353 (referring to two juvenile defendants by their initials only).[3] Such an approach would be similar to the redaction of names endorsed by the Supreme Court as an alternative to sealing a transcript. *See Press-Enterprise I*, 464 U.S. at 520.

Other steps short of complete closure are also available. For example, the Court could shield the juvenile from the view of the gallery if the defendant is otherwise publicly identifiable. Or, parts of proceedings could be closed on a case-by-case basis where the nature of the expected testimony or the arguments of counsel would necessarily reveal the identity of the defendant.

Alternatively, this Court could depend on Mr. Dwyer's discretion in not disclosing the name of the juvenile. *See Doe*, 933 F. Supp. at 652 n.2. The specific identity of the juvenile is irrelevant to the book Mr. Dwyer is writing about the court system, and he has no intention of disclosing the name to anyone unless this case is transferred for prosecution of the defendant as an adult. As a New York state court noted, "the likelihood of preserving anonymity is much greater, and the case for admission therefore much stronger, where the focus of inquiry is the court or the juvenile justice system generally rather than a particular party." *In re Robert M.*, 109 Misc. 2d 427, 431 n.12 (N.Y. Fam. Ct., N.Y. Cty. 1981).

**At A Minimum, The Court's Docket Should be Unsealed**

At the very least, this Court should unseal the docket, any prior sealing orders, and any charging document filed in this case, with only those redactions necessary to protect the juvenile's identity.[4] The public's First Amendment right of access unambiguously applies to

---

[2] There is no risk that an open courtroom will allow the juvenile's picture to be made available to the public because no photographs or video recordings may be taken in the courthouse. *See* Administrative Order 2007-10.

[3] The court in *Three Juveniles II* ultimately concluded that redacting the juveniles' names or using pseudonyms would be futile, as their identities had previously been publicized. 61 F.3d at 93-94. Mr. Dwyer is unaware of any prior publicity about this matter or the defendant's identity. *See L.M.*, 425 F. Supp. 2d at 955 (distinguishing *Three Juveniles II* on this basis).

[4] Section 5038(a) does not bar release of these documents, and the court may in its discretion authorize their disclosure to the public, including the press. *See A.D.*, 28 F.3d at 1359-60; *Three Juveniles II*, 61

LSKS LEVINE SULLIVAN
KOCH & SCHULZ, LLP

Hon. Margo K. Brodie
November 19, 2015
Page 5

the docket, which provides an essential "index to judicial proceedings and documents." *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004). Without access to the docket, the public and press cannot follow developments in a case, exercise their presumptive rights to attend proceedings and review records, or ascertain the positions being taken by the parties. Sealing the docket prevents the public even from knowing how or why this case was sealed, and thwarts appellate or collateral review of the underlying sealing decision. *See United States v. Alcantara*, 396 F.3d 189, 199-200 (2d Cir. 2005); *Hartford Courant*, 380 F.3d at 93-94.

As in most cases, the docket in this action surely contains much routine, non-sensitive information, such as the identities of counsel, the nature of the motions filed, and the dates of various court conferences. *See L.M.*, 425 F. Supp. 2d at 954-55. To the extent the docket contains information that can properly be withheld from the public, it likely can be easily redacted. *See Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1377 (8th Cir. 1990) (not burdensome for district court to redact identifying information from docket sheet).

Indictments and informations are similarly public records subject to the First Amendment access right. *See United States v. Smith*, 776 F.2d 1104, 1111-12 (3d Cir. 1985); *United States v. Anderson*, 799 F.2d 1438, 1442 n.5 (11th Cir. 1986). Without access to such documents, members of the public cannot understand the very basics of the criminal proceedings they are attempting to monitor. Even in cases involving juveniles where the courtroom has been sealed, courts have found, on balance, that such records should be available to the public in redacted from. *See, e.g., Three Juveniles I*, 862 F. Supp. at 659 (docket sheet and information available to public with names and identifying information redacted).

To the extent the Court wishes to hear further argument on this issue, we are available at the Court's convenience.

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By: *Thomas B. Sullivan*
Thomas B. Sullivan

cc: Richard Willstatter, Esq., counsel for defendant (via e-mail)
Assistant U.S. Attorney Douglas M. Pravda, Esq. (via e-mail)

---

F.3d at 90-91. A mandatory rule would also raise serious constitutional concerns. *See Globe Newspaper Co.*, 457 U.S. at 611 n.27.

# EXHIBIT 1

# Bloomberg BNA Media Law Reporter®

Source: Media Law Reporter Cases > U.S. District Courts, New York > U.S. v. Nelson, 22 Med.L.Rptr. 2320 (E.D.N.Y. 1994)

## 22 Med.L.Rptr. 2320
## U.S. v. Nelson
## U.S. District Court, Eastern District of New York

No. CR 94-823

September 8, 1994

### UNITED STATES OF AMERICA v. LEMRICK NELSON

### Headnotes

### NEWSGATHERING

**Access to places — Courtrooms — Criminal actions — Trial (▶40.1105.0502)**

**Restraints on access to information — Privacy (▶50.15)**

Juvenile Delinquency Act, 18 USC 5031-42, does not mandate complete closure of trial of juvenile who had been acquitted on murder charges in state court and who is now being charged with federal civil rights violations.

### Case History and Disposition

Application by newspapers seeking to open proceedings in prosecution of juvenile, who had earlier been acquitted in state court on murder charges arising out of 1991 Crown Heights riots, on civil rights charges.

Granted.

### Attorneys

Adam Liptak, of The New York Times Co., New York, N.Y., for the New York Times Co.

Eve Burton, of Weil, Gotshal & Manges, New York, for *The Daily News*.

### Opinion Text

### Opinion By:

Trager, J.:

### *Transcript of Bench Ruling*

Well, the court has studied *United States v. ADPG* Publishing Company [22 Med.L.Rptr. 1988], a Third Circuit case. I think it's a well-written opinion indicating that were the statute [the Juvenile Delinquency Act, 18 U.S.C. §§5031-42] to be read mandating complete closure it would probably raise serious First Amendment issues and it would in my mind.

The only argument that I have heard — well, let me step back. In light of the fact that this case has had enormous — there was a prior trial — there has been enormous publicity, most of the arguments that one would normally hear for closure strike me as not being very relevant here.

The only argument I've heard about the reasons for confidentiality, namely, which I think are very potent arguments, if there should be psychological studies and other issues where confidentiality and privacy concerns come into play, I think we can deal with those. I don't see how that justifies a per se blanket exclusion of the public.

I think the arguments in favor of public participation in terms of the integrity of the judicial process and all the other reasons set forth by the Supreme Court and the Third Circuit warrant that the proceeding be opened, unless some specific need arises to close it.

- End of Case -

Contact us at http://www.bna.com/contact/index.html or call 1-800-372-1033

ISSN 1944-0359

Copyright © 2015, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy. http://www.bna.com/corp/index.html#V